# EXHIBIT A

IN THE CIRCUIT COURT OF THE 6th JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

CASE NO:

ECOM PRODUCTS GROUP
CORPORATION, a Florida-For-
Profit Corporation,

     Plaintiff,

v.

MICHAEL COX, an individual,

     Defendant.

_____/

## COMPLAINT

Plaintiff, ECOM PRODUCTS GROUP CORPORATION, a Florida-For-Profit Corporation ("Plaintiff"), sues Defendant, MICHAEL COX, an individual ("Defendant"), and states as follows:

### Jurisdictional Allegations

1. Plaintiff is a Florida-For-Profit Corporation with a principal place of business in Pinellas County, Florida, at 100 Second Avenue South, Suite 903-S, St. Petersburg, FL, 33701.

2. Defendant is an individual residing in Santa Barbara County, California. Defendant entered into a Letter of Agreement with Plaintiff (the "Agreement"), pursuant to which he, *inter alia*, consented to Florida law governing any legal action or proceeding arising out of the Agreement. A copy of the Agreement is attached hereto at Exhibit "A."

3. Defendant entered into the Agreement, which includes the requirement that the instant lawsuit be brought in the State of Florida and Defendant submit to the exclusive jurisdiction of Florida courts, by way of consent.

***ELECTRONICALLY FILED 05/12/2021 01:53:22 PM: KEN BURKE, CLERK OF THE CIRCUIT COURT, PINELLAS COUNTY***

4. The exercise of personal jurisdiction over Defendant in the State of Florida, and venue in this judicial district is just and proper pursuant to the terms of the Agreement.

5. This action is suit seeking claims for breach of contract, tortious interference, and injunctive relief and damages in excess of $30,000.00, exclusive of attorneys' fees, costs or interest.

## General Allegations

6. Plaintiff is in the business of providing a full suite of social and eCommerce solutions for brands entering new markets domestically and cross-border. Plaintiff understands and utilizes sales channels and online social platforms allowing retailers and brands to connect with targeted consumers through organic social engagement.

7. Plaintiff positions brands in new markets that include the United States, the United Kingdom, Australia, and China. Plaintiff increases its customers efficiency and return on investment using a streamlined approach to social commerce and cross-border entry.

8. The sector specialists employed and utilized by Plaintiff coordinate social platforms, online sales channels, and third-party partnerships giving Plaintiff's customers brand exclusive access.

9. On January 1, 2020, Plaintiff and Defendant entered into the Agreement which was to continue for a period of five years.

10. Pursuant to the terms of the Agreement Plaintiff engaged Defendant as a consultant to provide international consulting services for the operation of Plaintiff ("Consultant"), and employed Defendant as an independent contractor.

11. As a Consultant for Plaintiff, Defendant reported directly to the Chairman as agreed by Plaintiff's Board of Directors, had the title of Group COO and Head of Platforms, and was required to provide consulting services, including the following:

    a. <u>Role 1</u>

        i. Appointed as one of the directors of Plaintiff.
        ii. Appointed as the Finance Director of the Group.
        iii. Appointed as the COO of Plaintiff to support the Group's strategy and objectives and generally support the Executive Chairman.

    b. <u>Role 2</u>

        i. Act as the Managing Director of Plaintiff's platforms, whereby Defendant was required to macro manage Plaintiff's platforms' investment and be responsible for managing and building these investments.

12. For performing these services as a Consultant, Defendant was compensated as detailed in Section 2 of the Agreement.

13. The Agreement contains a confidentiality covenant, which states in pertinent part:

> The consultant understands and agrees to keep any and all information confidential regarding the business plans, inventions, designs, products, services, processes, trade secrets, copyrights, trademarks, customer information, customer lists, prices, analytics data, costs, affairs, and any other information that could be considered proprietary to the Company ("Confidential Information"). The Consultant understands that disclosure of any such Confidential Information, either directly or indirectly, shall result in litigation with the Company eligible for equitable relief to the furthest extent of the law, including but not limited to, filing claims for losses and/or damages … The confidentiality term shall survive this agreement.

14. Defendant violated the Agreement by using Plaintiff's Confidential Information to contact and provide false and misleading information to Plaintiff's investors, clients, partners, and employees.

15. Defendant has used the Confidential Information in a campaign to destroy Plaintiff's business by using false, misleading, and disparaging information to damage Plaintiff, resulting in the loss of investors, business relations and opportunities, and disruption of employee relationships.

16. Defendant breached the Agreement by contacting the following investors of Plaintiff: (1) Mark Schaub; (2) Blaine Lando; (3) Gregory Cooper; (4) Tim Smith; (5) Sean Hecht; and (6) Lachlin Miller (collectively, the "Investors").

17. Defendant breached the Agreement by contacting the following clients and partners of Plaintiff: (1) C Magazine; (2) Hearst Media; (3) Robert Tran; and (4) the National Society of High School Scholars ("NSHSS") (collectively, the "Clients and Partners").

18. Defendant breached the Agreement by contacting the following employees of Plaintiff: (1) Leah Orley and (2) Jonathan White (collectively, the "Employees").

19. Defendant used Plaintiff's Confidential Information to contact the Investors and provide them with false and misleading information in an attempt to get the Investors to cease investing in Plaintiff.

20. Due to the false and misleading information provided by Defendant, some Investors did divest, including (1) Blaine Lando and (2) Sean Hecht.

21. Upon Information and belief, Defendant provided Plaintiff's Confidential Information to Mark Schaub. Upon information and belief, Defendant and Mark Schaub are conspiring to cause damage to Plaintiff's business.

22. Defendant used Plaintiff's Confidential Information to contact the Clients and Partners and provide them with false and misleading information. Defendant thereby attempted to convince these Clients and Partners to cancel their respective contracts with Plaintiff.

23. Defendant used Plaintiff's Confidential Information to contact C Magazine and Hearst Media during his employment with Plaintiff. Defendant also used false, misleading, and disparaging information that Defendant provided to C Magazine. This resulted in C Magazine terminating its contract with Plaintiff to provide marketing services for C Magazine.

24. Defendant used Plaintiff's Confidential Information and provided false and disparaging information to Hearst Media. This resulted in Hearst Media not providing Plaintiff the use of the Elle name as previously agreed as part of the Elleshop acquisition.

25. Defendant's actions prevented the Elleshop acquisition from proceeding during the period of his consulting relationship with Plaintiff.

26. Upon information and belief Defendant used Plaintiff's Confidential Information to contact C Magazine, Hearst Media, and NSHSS after his employment with Plaintiff.

27. Defendant used Plaintiff's Confidential Information to contact NSHSS to provide it with false, misleading, and disparaging information. This caused NSHSS to terminate its marketing and sales channel partnership with Plaintiff.

28. Defendant used Plaintiff's Confidential Information to contact Plaintiff's Employees to provide them with false and misleading information. Defendant did so to convince the Employees to terminate their employment with Plaintiff.

29. Defendant further breached the Agreement by providing Plaintiff's Confidential Information to third parties to facilitate the creation of imposter accounts on Instagram, concerning Plaintiff.

30. Upon information and belief, Defendant has used Plaintiff's Confidential Information, or has provided same to third parties, to create imposter accounts of Plaintiff to negatively affect Plaintiff's business.

31. Upon information and belief, Defendant has used Plaintiff's Confidential Information to make contact with many others and provided them with false and disparaging information about Plaintiff with the intent to harm Plaintiff's business.

32. Defendant has also breached the Agreement by providing confidential, false, and misleading information to Hearst Media, which caused Plaintiff to lose the business with Hearst Media.

33. Defendant's actions have resulted in Plaintiff's loss of some of the Investors, Clients and Partners, and Employees.

34. Plaintiff has hired the undersigned law firm and has agreed to pay reasonable attorneys' fees for its legal services in this action.

35. All conditions precedent have been performed, waived or excused.

## COUNT I – BREACH OF THE AGREEMENT

36. Plaintiff repeats and alleges the preceding allegations in paragraphs 1 - 35 as if fully set forth herein.

37. Plaintiff and Defendant entered into the Agreement pursuant to which Defendant agreed not to divulge, misuse, or otherwise disclose any of Plaintiff's Confidential Information.

38. The Agreement is an enforceable contract between Plaintiff and Defendant.

39. Defendant had an affirmative contractual duty and obligation per the Agreement that prohibited him from divulging, misusing, or disclosing Plaintiff's Confidential Information.

40. Defendant breached the terms of the Agreement with Plaintiff by, among other things, using Plaintiff's Confidential Information to contact Plaintiff's Investors, Clients and Partners, and Employees to provide them with false and misleading information about Plaintiff and its business.

41. As a direct and proximate cause of Defendant's wrongful actions and breach of the Agreement as described herein, Plaintiff has sustained substantial damages, and will continue to accrue and sustain such damages.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant. Plaintiff further requests that the Court enter an award of damages for all damages resulting from Defendant's material breach of the Agreement, together with all related prejudgment interest, post judgment interest, attorneys' fees, and costs, and any further relief that this Honorable Court deems just and proper.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

42. Plaintiff repeats and alleges the preceding allegations in paragraphs 1 - 35 as if fully set forth herein.

43. Plaintiff has ongoing business relationships with its Investors, Clients and Partners, and Employees, and there is an understanding that those relationships would continue without improper and unlawful interference by Defendant.

44. Defendant has knowledge of Plaintiff's ongoing business relationships with its Investors, Clients and Partners, and Employees due to his employment with Plaintiff and access to Plaintiff's Confidential Information.

45. Defendant intentionally and without justification used Plaintiff's Confidential Information to contact Plaintiff's Investors, Clients and Partners, and Employees to provide them with false and misleading information to purposefully interfere with Plaintiff's business relationships with its Investors, Clients and Partners, and Employees.

46. Plaintiff has suffered and continues to suffer substantial damages due to Defendant's intentional interference with Plaintiff's business relationships with its Investors, Clients and Partners, and Employees.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant. Plaintiff further requests that the Court enter an award of damages for all

damages resulting from Defendant's tortious interference with Plaintiff's business relations, together with all related prejudgment interest, post judgment interest, and costs, and any further relief that this Honorable Court deems just and proper.

## COUNT III – REQUEST FOR INJUNCTIVE RELIEFF

47. Plaintiff repeats and alleges the preceding allegations in paragraphs 1 - 35 as if fully set forth herein.

48. Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Defendant.

49. Plaintiff has no adequate remedy at law.

50. Unless Defendant is temporarily, preliminarily, and thereafter permanently enjoined from misappropriating Plaintiff's Confidential Information and using it to provide false and misleading information, Plaintiff will be irreparably harmed by the loss of corporate opportunities, goodwill, and client and employee relationships of an unknown amount and value, resulting in present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable, and damage to Plaintiff's legitimate business interests.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a preliminary, and thereafter, a permanent injunction enjoining Defendant, directly or indirectly, and whether acting alone or in concert with others, from disclosing, misusing, or otherwise misappropriating Plaintiff's Confidential Information, together with all related prejudgment interest, post judgment interest, and costs, and any further relief that this Honorable Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all matters so triable.

Respectfully submitted,

**MAVRICK LAW FIRM**
*Attorneys for ECOM Products Group Corporation*
1620 West Oakland Park Boulevard
Suite 300
Fort Lauderdale, Florida 33311
Telephone: (954) 564-2246
Peter T. Mavrick, Esq.
E-mail: peter@mavricklaw.com
Nathan A. Kelvy, Esq.
E-mail: nathan@mavricklaw.com


By: /s/ Peter T. Mavrick
Peter T. Mavrick
Florida Bar No.: 0083739
Nathan A. Kelvy
Florida Bar No.: 0096815

# EXHIBIT A

DocuSign Envelope ID: 65F6C082-F583-4349-895F-41DABB156225

# CONSULTING AGREEMENT

## ECOM PRODUCTS GROUP CORPORATION

## AND

## MICHAEL COX

This **LETTER OF AGREEMENT** (the "**Agreement**") is dated [1st January 2020].
Between

**(A) ECOM Products Group Corporation** a company incorporated in Florida located at PO Box 10542, Tampa, FL 33786 ("**EPGC**" or the "**Company**"); and

**(B) Michael Cox** of 57 Humphrey Rd, Santa Barbara, CA 93108 (the "**Consultant**")

NOW THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged by the Company and the Consultant (collectively the "**Parties**"), it is hereby mutually agreed as follows:

**1. Consulting Services EPGC.** EPGC engages the Consultant to provide International Consulting Services for the operation of EPGC. The Consultant shall report directly to the Chairman as agreed by the Board of Directors of the Company. The Consultant's title shall be "*Group COO and Head of Platforms*", and the Consulting Services provided shall include the following:

a) Role 1

  i) Appointed as one of the directors of the Company.

  ii) Appointed the Finance Director of the Group.

  iii) Appointed the COO of the Company to support the Group's strategy and objectives and generally support the Executive Chairman.

b) Role 2

  i) Act as the Managing Director of EPG platforms, whereby the Consultant shall macro manage EPG platforms' investment and be responsible for managing and building these investments.

**2. Consulting Fee and Bonuses.** For the services carried out in Item 1, the Consultant shall receive the following fee and bonuses:

a) For Role 1

  i) An annual Director's Fee of USD20,000 to be paid in the form of shares of the Company (an OTC listed company), and issued at the opening price of each year and if during Year 1 at US$0.27 per share; and

  ii) An hourly rate of US$62.50 for the provision of agreed Consulting Services, capped at a maximum of US$10,000/month combined for both Role 1 and Role 2.

b) For Role 2

  i) An hourly rate of US$62.50 for the provision of services as Managing Director of EPG Platforms, capped at a maximum of US$10,000/month combined for both Role 1 and Role 2.

  ii) Bonuses – Bonuses to be paid in the form of shares of the Company for the following:

    ▪ Capital Raise for the Company – 1.5% of any capital raised through an investor introduced by the Consultant;

- Investment Transactions – Any investment transactions made by the Consultant, which have been agreed as per each transaction by the Chairman; and

- Growth of Investments – For achieving agreed growth of each investment subject to review and agreement by the Chairman.

In any one year the Consultant can opt to convert any part of his fees earned during the period at the opening share price of that year, and if during Year 1 at US$0.27 per share.

**3. Term.** This Agreement shall commence on 1st January 2020 and shall be for a period of 5 years.

**4. Independent Contractor.** The Consultant will operate under agreed levels of authority, and shall at all times be, and conduct himself as, an independent contractor in respect of Company, and shall not, under any circumstances, create, or purport to create, any obligations on behalf of Company or its Affiliates including, but are not limited to, any holding company of Company or any subsidiary of such holding company or any subsidiary of Company.

**5. Confidentiality.** The Consultant understands and agrees to keep any and all information confidential regarding the business plans, inventions, designs, products, services, processes, trade secrets, copyrights, trademarks, customer information, customer lists, prices, analytics data, costs, affairs, and any other information that could be considered proprietary to the Company ("Confidential Information"). The Consultant understands that disclosure of any such Confidential Information, either directly or indirectly, shall result in litigation with the Company eligible for equitable relief to the furthest extent of the law, including but not limited to, filing claims for losses and/or damages. In addition, if it is found that the Consultant divulged Confidential Information to a third (3rd) party with the Consultant shall be entitled any and all reimbursement for their legal and attorney's fees. After the Consultant has terminated its Agreement with the Company, the Consultant shall still be bound to Section 6 of this Agreement ("Confidentiality Term"). The confidentiality term shall survive this agreement. If the Confidentiality Term is beyond any limit set by local, State, or Federal laws, then the Confidentiality Term shall be the maximum allowed legal time-frame.

**6. Indemnification.** The Consultant agrees to indemnify and hold harmless the Company or its affiliates from and against any and all reasonable loss, liability, charge, claim, damage, and expense whatsoever, as and when incurred, arising out of, based upon, or in connection with the Consulting Services provided under this Agreement or such loss, liability, charge, claim, damage or expense arising out of the Consultant's failure to comply with the terms and provisions of this Agreement, or any breach of any representation, warranty, covenant, or agreement of the Consultant contained in this Agreement.

**7. Amendments and Waivers.** The provisions of this Agreement, including the provisions of this sentence, may not be amended, modified or supplemented, unless such amendment, modification or supplement is in writing and signed by the parties hereto. If the Employer or Employee fails to enforce a provision or section of this Agreement, it shall not be determined as a waiver or limitation. Either party shall remain the right to enforce and compel the compliance of this Agreement to its fullest extent.

**8. Severability.** This Agreement shall remain in effect in the event a section or provision is unenforceable or invalid. All remaining sections and provisions shall be deemed legally binding unless a court rules that any such provision or section is invalid or unenforceable, thus, limiting the effect of

another provision or section. In such case, the affected provision or section shall be enforced as so limited.

**9. Assignment.** This Agreement is between Company and the Consultant and the Consultant may not sell, assign, transfer or hypothecate any rights or interests created under this Agreement or delegate any of their duties without the prior written consent of the Company.

**10. Entire Agreement.** This Agreement is intended by the Parties as a final expression of their agreement and intended to be a complete and exclusive statement of this Agreement and understanding of the parties hereto in respect of the subject matter contained herein.

**11. Attorney Fee's.** If any legal action or any arbitration or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach or default in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees incurred in this action or proceeding in addition to any other relief to which he or it may be entitled.

**12. Termination.** The Company reserves the right at any time and without any liability or continuing obligation to the Consultant to terminate this Agreement with 90 calendar days' notice.

Notwithstanding the provisions for termination as stated herein, this Agreement may be terminated forthwith by the Company without prior notice or any compensation if the Consultant at any time:

a) Commits any material serious or persistent breach of any of the provision herein contained or be guilty of willful neglect in the discharge of its / their duties as stipulated in this Agreement;

b) is guilty of any grave misconduct or dishonesty or commits any act which in the opinion of the Company is likely to bring the Company into disrepute whether or not such misconduct, dishonesty or act is directly related to the affairs of the Company.

c) becomes unfit to fulfill its / their duties or in the opinion of the Company if he is guilty of insubordination or are inefficient in the performance of his duties;

d) becomes guilty of any criminal offence or has committed an act which in the opinion of the Company is of such a nature as to adversely affect the trust and confidence of the Company in the Consultant for providing the Consulting Services;

e) refuses to accept the orders of the Company which are within the law and within the scope of the Consulting Services without any reasonable grounds.

The Company shall, on the happening of any one or more of the above-mentioned events or on the happening of any other event not specifically mentioned herein, which the Company may at its discretion consider adverse to its interest and / or consider to be of a serious nature or in the event of a breach of an express or implied term of this Agreement be entitled to terminate this Agreement immediately without any liability on the part of the Company and without prejudice to any right or remedies available to the Company at law or otherwise in respect of the events mentioned.

The Consultant must provide the company with 90 days' notice before leaving the company. If in the event of the Consultant leaving before the 90-day notice period is completed, the Consultant forfeits the right to any bonuses accrued during that period.

**13. Approval by Board of Directors.** To be valid and be enforceable, approval from the Board of Directors of the EPGC need to be obtained.

**14. Governing Law and Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Each of the parties agrees that any legal action or proceedings arising out of or relating to this Agreement shall be brought to the Courts of the State of Florida and irrevocably submits to the exclusive jurisdiction of such courts.

As witness the hands of the parties hereto the day and year first above written.

Signed by Andrew Wyles Waters )
For and on behalf of )
**ECOM PRODUCTS GROUP** )   *DocuSigned by:* [signature]
**CORPORATION** )   67FEABEEA8C1453...
)
)
)
)

Signed by )   *DocuSigned by:* Michael Cox
**MICHAEL COX** )   57622E9C298F4B2...
)
)
)
)